Erin CHRISTENSEN, Appellant–Respondent,

v.

Bishop CHRISTENSEN, Appellee–Petitioner.

No. 20A05–0012–CV–528.

Court of Appeals of Indiana.

July 23, 2001.

·Norman L. Burggraf, Jr., Elkhart, IN, Attorney for Appellant.

John William Davis, Jr., Davis & Roose, Goshen, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Respondent, Erin Christensen (Erin), appeals the trial court's determination that it had jurisdiction to modify a foreign child custody order, thereby transferring primary physical custody of her two minor children, B. and A., to Bishop Christensen (Bishop), her former husband and the children's biological father.

We affirm.

### ISSUE

Erin raises four issues for our review, which we consolidate and restate as the sole dispositive issue of: whether the trial court erred by assuming jurisdiction to hear all matters involving custody and visitation by domesticating a foreign divorce decree and finding that it had jurisdiction over the children under the foreign decree and the Uniform Child Custody Jurisdiction Act (UCCJA) and further finding that the parties submitted to the court's jurisdiction by filing a signed and notarized joint motion, modifying the foreign decree.

### FACTS AND PROCEDURAL HISTORY

Erin and Bishop were divorced in Seminole County, Florida, on February 21, 1997. Pursuant to the divorce decree, the parties shared custody of their two minor children, but Erin had primary care and residential control of the children. Following the dissolution of marriage, Bishop moved to Elkhart County, Indiana, in February 1997, and Erin moved with the children to Newport News, Virginia, in May, 1997. It is undisputed that Erin and the children have lived in Virginia ever since.

On August 4, 1998, Erin filed a Uniform Reciprocal Enforcement of Support Act petition in Elkhart County Superior Court No. 3, requesting the Elkhart Court to enforce the Florida child support order, and registration of the Florida spousal support order. The Elkhart trial court entered enforcement orders with respect to Bishop's support obligations on September 29, 1998, and December 8, 1998.

On March 5, 1999, Bishop filed a verified "Complaint to Domesticate a Foreign Decree of Dissolution of Marriage" in Elkhart Superior Court No. 1. Specifically, the Complaint contained provisions verified under oath, signed by both parties, and notarized, stating that, "Elkhart County is the proper jurisdiction to enforce the terms of the judgment of divorce.... [and] it would be in the best interests of the parties if the foreign judgment of divorce were domesticated in Elkhart County, Indiana, to protect the interests of the parties and their minor children." (R. 19). Submitted with these pleadings were the following: a copy of the Final Judgment of Dissolution of Marriage in Florida, and a joint verified Agreed Modification of Marital Agreement and Dissolution of Marriage. All pleadings were signed by both Erin and Bishop and notarized. Therefore, the trial court deemed the pleadings to have been jointly filed *pro se*. As a result, the trial court granted the prayer of the Complaint, domesticated the foreign dissolution decree and assumed jurisdiction over all marital issues. Specifically, the trial court determined the Agreed Modification of Marital Agreement and Dissolution of Marriage to be an Agreed Modification Order, and thereby approved the Agreed Modification as the order of the court modifying the Florida Judgment of Dissolution.

On May 6, 1999, Erin filed a motion to vacate the trial court's order assuming jurisdiction over all marital issues, and to dismiss all other custody related matters filed by Bishop. Following a hearing on May 10, 1999, the trial court ruled that it was:

> the proper jurisdiction to hear all matters involving custody and visitation .... [and] that the parties submitted to the jurisdiction of this Court by filing a motion modifying the [Florida] divorce decree, and that the same was signed by both parties in the presence of individual notaries. Court denies former wife's motion to transfer this cause to the State of Virginia.

(R. 87).

On April 24, 2000, Erin filed a Motion to Reconsider the trial court's May 10, 1999 order assuming jurisdiction, and requested that the trial court decline to further act in this cause because it lacked subject matter jurisdiction. After a hearing, the trial court denied Erin's motion.

Thereafter, following a two-day evidentiary hearing held on May 19 and May 31, 2000, the trial court entered its order modifying physical custody in favor of Bishop. Erin now appeals.

## DISCUSSION AND DECISION

Erin argues that the trial court lacked jurisdiction to determine the custody of A. and B. because it failed to follow the jurisdictional provisions of the UCCJA. Specifically, Erin contends that the trial court failed to uphold its affirmative duty to question its jurisdiction when it discovered that the custody dispute had an interstate dimension.

■ The UCCJA sets out the method to determine jurisdiction. *Williams v. Williams*, 555 N.E.2d 142, 145 (Ind.1990). Under the UCCJA, an Indiana court has an affirmative duty to question its jurisdiction when it becomes aware of an inter-

state dimension in a child custody dispute. *Ashburn v. Ashburn*, 661 N.E.2d 39, 41 (Ind.Ct.App.1996), *trans. denied.* The trial court must first determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. *Id.* In determining whether a trial court has improperly exercised jurisdiction under the UCCJA, we apply an abuse of discretion standard. *Moody v. Moody*, 488 N.E.2d 378, 381 (Ind.Ct.App.1986). An abuse of discretion will occur when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993). The jurisdictional portion of the UCCJA states:

> Sec. 3. Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> (1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
>
> (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
>
> (3) the child is physically present in this state and the child has been abandoned; or
>
> (4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.
>
> (b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
>
> (c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

Ind.Code § 31–17–3–3.

Moreover, the parties may not by their consent impose subject matter jurisdiction; subject matter jurisdiction must be derived from statute or the Constitution. *See Clark v. Clark*, 404 N.E.2d 23 (Ind.Ct.App.1980); and *Campbell v. Campbell*, 180 Ind.App. 351, 388 N.E.2d 607 (1979). The issue of a court's subject matter jurisdiction in a child custody proceeding may be raised at any time by either party or *sua sponte* by this court on appeal. *Clark*, 404 N.E.2d at 30; *Campbell*, 388 N.E.2d at 608. Therefore, in *Clark* and *Campbell*, this Court held that because the trial court cannot base its subject matter jurisdiction on the parties' consent, we are required to review the factual situation of each case to determine if the trial court had subject matter jurisdiction pursuant to the statutory guidelines of the UCCJA.

Subsequent to *Clark* and *Campbell*, in a memorandum decision decided on October 31, 1989, this Court relied primarily upon *Clark* and *Campbell* to conclude that a trial court could not have exercised authority in a child custody proceeding because the parties' could not consent to the trial court's jurisdiction to determine child custody. *Williams v. Williams*, No. 55A01–8904–CV–118, 546 N.E.2d 126 (Ind.Ct.App. Oct. 31, 1989).

In that case, Bonnie Williams and Charles Williams were married in 1974 in Illinois where they resided until 1982 when Charles moved to Indiana. *Id.* Two children were born of the marriage; a daughter, Erma, was born August 25, 1974, and a son, Ira, was born October 24, 1980. *Id.* In September 1987, by mutual consent of the parties, Erma moved to Indiana to live with her father. *Id.* at 2. Ira remained in Illinois with Bonnie. *Id.* On September 11, 1987, Charles filed a petition for dissolution in Indiana, seeking custody of Erma, and requesting that Bonnie be granted custody of Ira. *Id.* On January 7, 1988, the marriage of Bonnie Williams and Charles Williams was dissolved by the Morgan County Circuit Court. *Id.* At that time, Bonnie was a resident of Illinois and Charles was a resident of Indiana, however, the decree made no findings regarding the custody of Erma or Ira. *Id.* Pursuant to Bonnie's request for a further hearing to adjudicate unresolved issues of dissolution filed on February 2, 1988, the trial court held a hearing on November 2, 1988. *Id.* At the hearing on November 2, 1988, the trial court specifically questioned the parties to determine if there was any dispute as to its jurisdiction to issue orders of custody, support, and visitation. *Id.* Bonnie and Charles both agreed to the trial court's jurisdiction of the matters, and the trial court determined that it had jurisdiction as a result of the parties' consent. *Id.* Following the hearing, the trial court granted custody of Erma and Ira to Charles irrespective of the fact that Bonnie and Ira continued to reside in Illinois. *Id.* On December 20, 1988, Bonnie filed a motion to correct errors, challenging the trial court's subject matter jurisdiction to enter an order regarding the custody of Ira. *Id.* The trial court denied Bonnie's motion, and this Court reversed the trial court's November 2, 1988 judgment. *Id.* at 5. Specifically, we held that: "[d]espite Bonnie's request for the trial court's assistance and her consent to its jurisdiction, we must agree with her now that the trial court did not have subject matter jurisdiction to determine either the custody of Ira, or the support and visitation issues contingent upon that determination." *Id.*

Nevertheless, our supreme court granted transfer because it disagreed with this Court regarding whether Bonnie waived her claim that the Indiana trial court lacked jurisdiction. *Williams v. Williams*, 555 N.E.2d 142 (Ind.1990). Specifically, our supreme court held that:

> Because of the voluntary conduct of Bonnie in affirmatively engaging the Indiana courts to determine custody, and expressly consenting to the trial court's authority to determine custody, we find that she has waived any question regarding the authority of the court to decide the issue of custody under the facts of her case and has thus waived the trial court's jurisdiction over her particular case.

*Id.* at 145. Our supreme court in *Williams* agreed with a portion of our holding in *Clark* by stating that subject matter jurisdiction cannot be conferred by consent of the parties. Our supreme court further noted that, "[o]nce a court possesses subject matter jurisdiction to consider the general class or kind of case, its specific jurisdiction over a particular case within the general class is subject to waiver." *Id.* at 144 (citations omitted).

Moreover, in vacating our earlier memorandum decision and affirming the trial court's judgment, our supreme court further reasoned that:

The authority to hear child custody cases is not directly granted by the UCCJA. Rather, Sec. 3(a) [recodified as Ind.Code § 31–17–3–3(a) ] merely operates to restrict the existing power of courts to hear custody cases.... The source of this competency to decide child custody matters is found in Ind.Code § 31–1–11.5–20 [recodified as Ind.Code §§ 31–17–2–1; 31–17–2–3; 31–17–2–4; and 31–17–2–24] and is an incidental grant of specific authority within the general grant of subject matter jurisdiction to hear actions for dissolution and child support. The jurisdictional limitations imposed by the UCCJA are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case. This exercise of authority is waivable.

*Id.* at 145 (citations omitted).

■ Therefore, in accordance with precedent, we hold that by voluntarily engaging an Indiana trial court to determine child custody and expressly consenting to the trial court's authority to determine custody, a party effectively avails oneself to the jurisdiction of an Indiana trial court to determine child custody, thereby waiving any question regarding the authority of the trial court to decide the issue of custody and waiving the trial court's jurisdiction over the particular case. *See Williams,* 555 N.E.2d at 145.

■ Additionally, this holding satisfies the other purpose of the UCCJA; to prevent parents from seeking custody in different jurisdictions in an attempt to obtain a favorable result. Ind.Code § 31–17–3–1. In the case at hand, Erin voluntarily agreed to the Elkhart Superior Court's jurisdiction of the matters, and the trial court determined that it had jurisdiction to hear the case since both Erin and Bishop had consented to its jurisdiction. However, Erin obtained an unfavorable ruling and is now seeking to have that decision overturned. If she is successful, she will seek custody in Virginia, the state she argues has subject matter jurisdiction under the "home state test." Ind.Code § 31–17–3–3(a)(1). However, Virginia has also adopted the Uniform Child Custody Jurisdiction Act.Code 1950, §§ 20–125 to 20–146. Therefore, if we reverse the Indiana trial court's custody determination it will be difficult for Virginia to avoid relitigating the custody of A. and B. Consequently, we should refrain from initiating competition between our courts and the courts of Virginia, and instead give effect to the legislative intent of the UCCJA; to prevent forum shopping.

We conclude that by submitting herself to the jurisdiction of the Elkhart County Superior Court by filing a motion to modify a foreign divorce decree, Erin voluntarily and affirmatively engaged the Indiana trial court to determine custody and expressly consented to the Indiana trial court's authority to determine custody. Thus, Erin thereby waived any question regarding the authority of the Indiana trial court to decide the issue of the custody of A. and B. and further waived any claim regarding the trial court's jurisdiction over her particular case. Consequently, we hold that the trial court properly assumed jurisdiction over this case.

Affirmed.

SULLIVAN, J., concurs.

FRIEDLANDER, J., concurring in result with opinion.

FRIEDLANDER, Judge, concurring in result.

I agree with the result reached by the majority, but am unwilling to endorse the

views expressed in the analysis of our supreme court's opinion in *Williams v. Williams*, 555 N.E.2d 142 (Ind.1990).

It is clear to me that the supreme court sought to narrow its holding in *Williams* to the facts of that case. For this reason, I do not believe *Williams* should be viewed as a case with broad implications on the jurisdictional questions confronting us in this case. Nevertheless, the majority determined that the facts of this case are sufficiently analogous to those in *Williams* so as to make that case applicable here. It therefore represents binding authority upon this court. I agree with those conclusions. I part company with the majority, however, to the extent that its analysis of this issue amounts to a too-thinly-veiled criticism of the *Williams* opinion. The Indiana Court of Appeals is bound by the pronouncements of the Indiana Supreme Court, and I see no reason to engage in a critique of the decision reached by our supreme court in *Williams v. Williams*, 555 N.E.2d 142. *See Knowles v. State*, 571 N.E.2d 1308 (Ind.Ct.App.1991) (Baker, J., concurring in result).