Larry D. LOLLAR, Jr., Appellant,

v.

Michelle A. HAMMES, Appellee.

No. 30A01–0312–CV–471.

Court of Appeals of Indiana.

May 24, 2004.

Janet L. Manship, Allen Wellman McNew, Greenfield, IN, Attorney for Appellant.

John L. Davis, Pritzke & Davis, LLP Greenfield, IN, Attorney for Appellee.

**OPINION**

SULLIVAN, Judge.

Appellant, Larry Lollar ("Father"), challenges the trial court's dismissal of his petition for custody of his minor child, L.H. Father presents three issues for our review, one of which we find dispositive, whether Michelle Hammes ("Mother") consented to the court's exercise of jurisdic-

tion to decide the matter of custody of L.H.

We reverse.

On November 11, 1990, L.H. was born in Metairie, Louisiana. Lollar was the admitted father of L.H., although his name was not included on the birth certificate and no action or proceeding to establish paternity, support, visitation, or custody was initiated at that time. Father's contact with L.H. was limited to a short time following her birth. Sometime thereafter, Father moved to Indiana. L.H. resided with Mother, and eventually they relocated to the State of Florida.

On January 2, 2002, the Hancock County Prosecutor's Office, on behalf of L.H., filed a verified petition to establish paternity and provide for support in Hancock County Superior Court. The caption of this petition reads: "In the Matter of the Paternity of [L.H.] BY NEXT FRIEND STATE OF INDIANA." Appendix at 7. At the time the petition was filed, Mother and L.H. continued to reside in Florida, and Father resided in Indiana. On April 18, 2002, the court held a hearing on the petition to establish paternity, at which time an agreement between the State and Father was apparently submitted to the court.[1] The court requested that the State submit an order to the court setting forth the terms of the agreement. On April 25, 2002, the court approved the agreement submitted to the court by signing a Judgment of Paternity which estab-

lished that Lollar was the natural and biological father of L.H. and further provided for custody, visitation, and support of L.H. Specifically, the court ordered that L.H. remain in Mother's custody, that Father was to have reasonable visitation, and that Father pay child support in the amount of $120.00 per week.

On or about August 16, 2002, Mother permitted L.H. to come to Indiana and stay with Father.[2] On September 6, 2002, Father filed a verified petition for emergency custody of L.H. under the same cause number in which the paternity judgment was entered. In the petition Father alleged, among other things, that for a period of three years beginning when L.H. was seven years old, L.H. had been subjected to repeated acts of sexual abuse, including rape, by her stepbrother and other teenagers in the neighborhood where she lived in Florida.[3] Father also asserted that L.H. feared her stepbrother and did not wish to return to Mother's home in Florida.

The trial court issued an ex parte order granting emergency custody of L.H. to Father and setting the matter for hearing on September 23, 2002. On the day of the hearing, Mother sent a handwritten letter to the court, which was file stamped for September 23, 2002, requesting that the hearing be continued so that she would have time to retain counsel. The court continued the hearing and ordered that it be reset upon request of one of the parties.

---

1. The record does not contain such agreement, but the Chronological Case Summary ("CCS") contains an entry for April 18: "AGREEMENT PRESENTED." App. at 1.

2. There is apparently some dispute between Mother and Father as to the length of L.H.'s visit with Father. Father asserts that Mother granted him custody of L.H. and requested that he enroll L.H. in school in Indiana. Mother, however, contacted Father on Sep-

tember 3, 2002 and informed him that she would be traveling to Indiana to pick up L.H.

3. Apparently, juvenile charges were brought against L.H.'s stepbrother, and he was subsequently confined in an institution in Florida. Father asserted in his petition that the stepbrother was scheduled to be released and was to return to Mother's home in November 2002.

On November 26, 2002, Attorney John Davis filed an appearance on behalf of Mother. On January 13, 2003, Mother filed a combined motion to dismiss Father's petition for emergency custody for lack of jurisdiction under the Uniform Child Custody Jurisdiction Law ("UCCJL")[4] and request for a hearing. On the same day, Mother also filed a petition for a home study and appointment of a guardian ad litem. After conducting a hearing on Mother's motion to dismiss, the trial court entered an order on October 31, 2003 dismissing for lack of jurisdiction Father's petition for emergency custody. Pursuant to Father's motion to stay order pending appeal, the court, exercising emergency jurisdiction, stayed the dismissal order until an emergency hearing could be held.[5] This appeal ensued.

■■■■ A court's jurisdiction either exists or does not, and the question of a court's jurisdiction is therefore a question of law not entrusted to the trial court's discretion but rather is reviewed *de novo*. *Kondamuri v. Kondamuri*, 799 N.E.2d 1153, 1156 (Ind.Ct.App.2003), *trans. denied*. To the extent that the existence of jurisdiction must be determined on the basis of disputed facts, the trial court's determination of jurisdictional facts is reviewed for clear error. *Id.*

■■■■ Once a court possesses subject matter jurisdiction to consider the general kind of case, its specific jurisdiction over a particular case within the general class is subject to waiver. *Williams v. Williams*, 555 N.E.2d 142, 144 (Ind.1990). An Indiana court's competency to decide child custody matters is an incidental grant of specific authority within the general grant of subject matter jurisdiction to hear actions for dissolution and child support. *Id.* at 145. Our Supreme Court has held that the jurisdictional limitations imposed by the UCCJL are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise its authority over a particular case. *Id.* Because the UCCJL does not directly grant authority to hear child custody cases, but rather operates only to restrict the existing power of courts to hear particular custody cases, a court's exercise of authority under the UCCJL is subject to waiver. *Id.*

■■■■ Upon appeal, Father argues that Mother waived the UCCJL's limitations by initiating the case, submitting to and enjoying the benefits of the court's order, seeking affirmative relief from the court, and failing to timely object to the court's exercise of jurisdiction. In support of his argument, Father directs us to *Williams*, *supra*, and *Christensen v. Christensen*, 752 N.E.2d 179 (Ind.Ct.App.2001). In both of those cases, the reviewing court found that the party objecting to the court's jurisdiction to decide custody matters had voluntarily invoked or submitted to the court's authority and expressly consented thereto. Under those circumstances, the courts held that the complaining party had waived the right to challenge the court's jurisdiction. *See Williams*, 555 N.E.2d at 145; *Christensen*, 752 N.E.2d at 184.

Here, it is unclear as to what precipitated the filing of the paternity action in the Hancock County Superior Court.[6] Never-

---

4. *See* Ind.Code 31–17–3 (Burns Code Ed. Repl.2003).

5. The trial court set an emergency hearing for February 8, 2003. However, it is unclear from the CCS whether the trial court ever held a hearing on Father's petition for stay of the proceedings.

6. It would appear that the petition to establish paternity and to provide support was filed pursuant to Ind.Code § 31–14–4–2 (Burns

theless, there are several indications that it was Mother who requested that the action be initiated. First, we note that the paternity action was brought on behalf of L.H. by the State of Indiana. Under our paternity statutes, the prosecuting attorney shall file a paternity action and represent the child in that action when a request is made by the child, the mother, a man alleging to be the father, the division of family and children, or the county office of family and children. Ind.Code § 31–14–4–2(a) (Burns Code Ed. Repl.2003). The petition itself does not identify upon whose request the action was filed. However, the court's paternity judgment and order, which was submitted by the State at the request of the court, reads: *"Comes now [Mother]*, by the HANCOCK COUNTY Deputy Prosecuting Attorney...."[7] App. at 10. Thus, while it is not entirely clear, it would appear from the record that the paternity action was initiated by the Hancock County Prosecutor's Office upon Mother's request.

We hasten to observe that the uncertainty and invited confusion as to the initiating source of the Petition to Establish Paternity and Provide for Support, particularly with respect to jurisdictional questions[8] could be averted by an appropriate

allegation in the petition itself and supporting documentation made of record.

■ Additionally, we note that the court's order was apparently a codification of an agreement which was submitted to the court at the April 18 hearing. If indeed Mother requested that the action be filed on behalf of L.H., it is likely that Mother was involved in setting forth the terms of the agreement establishing paternity and providing for custody, visitation, and child support. Where a party voluntarily seeks the benefits of the court's jurisdiction, that party shall be estopped from challenging the court's jurisdiction. *Kondamuri*, 799 N.E.2d at 1159. Under the circumstances of this case, it appears that Mother has availed herself of the Indiana court's jurisdiction to decide matters of custody concerning L.H. and therefore, cannot now be heard to complain.

■ Regardless, even if Mother did not request that the paternity action be initiated or was not involved in setting forth the terms of the agreement, Mother failed to timely object to the court's exercise of jurisdiction. Where a judgment is rendered by a court that lacks jurisdiction over the particular case, the judgment is voidable and requires a timely objection or

Code Ed. Repl.2003). Assuming this to be so, it would have been filed upon the request of Mother or of the division of family and children or the county office of family and children. Because the petition alleged that "Public funds have been expended for the support and care of said child," it is quite possible that the petition was prompted by a request from the State of Florida to either the division of family and children or the county office. App. at 7. In any event, Mother's consent to the filing of the petition, whether express or implied may be assumed. *See* 14B, Fla. Stat. Ann. § 409.2561 (2001) (providing for assignment of rights and subrogation in favor of the Florida public assistance agency).

7. There is nothing in the record which indicates that a division or county office of family and children is in any way involved in the current action, pursuant to Ind.Code § 31–14–4–3 (Burns Code Ed. Repl.2003). Further, we note that Father is identified as the "respondent" in the action. Finally, given that L.H. was eleven years old at the time that the paternity action was initiated, it is unlikely that such was done upon her request.

8. Questions concerning the identity of the initiating source for the filing of a petition might also present issues relative to the standing of the initiating party to invoke the court's jurisdiction.

the lack of jurisdiction over the particular case is waived. *Id.* at 1156–57.

Here, Mother received a copy of the court's order providing for custody of L.H., but did nothing for five months, and then only after Father filed his petition for emergency custody. Mother did not contest the court's jurisdiction until nearly nine months after the court issued the order providing for custody, visitation, and support of L.H. In the meantime, Mother accepted the benefits of the court's order. Thus, even if the UCCJL did not confer jurisdiction upon the Indiana court to make determinations as to custody matters involving L.H., Mother did not timely object to the court's assumption of jurisdiction. *See Foor v. Town of Hebron,* 742 N.E.2d 545 (Ind.Ct.App.2001) (holding that jurisdictional challenge was waived when party failed to raise issue at earliest opportunity possible). Because Mother accepted the benefits of the court's order as to the initial custody determination and did nothing to challenge the court's jurisdiction until a custody order contrary to her wishes was entered, Mother is estopped from objecting to the Indiana court's jurisdiction to decide custody matters concerning L.H. Therefore, we conclude that the trial court erred in dismissing Father's petition.

The judgment of the trial court is reversed and the cause remanded for further proceedings.

ROBB, J., and GARRARD, Sr.J., concur.