**In re the Marriage of Anthony N. STEWART, Appellant–Respondent,**

v.

**Signe L. (Stewart) VULLIET, Appellee–Petitioner.**

No. 12A02–0610–CV–896.

Court of Appeals of Indiana.

May 30, 2007.

David W. Stone, IV, Anderson, IN, Attorney for Appellant.

Nancy L. Cross, Monty K. Woolsey, Miroff Cross & Woolsey, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Anthony N. Stewart ("Father") appeals the trial court's grant of a motion to dismiss filed by Signe L. (Stewart) Vulliet ("Mother"). Father raises three issues, which we consolidate and restate as whether the trial court abused its discretion by dismissing child custody and visitation issues based upon inconvenient forum. On cross appeal, Mother argues that the trial court abused its discretion by finding that Mother waived any argument regarding their child's home state under the Uniform Child Custody Jurisdiction Act ("UCCJA"), Ind.Code §§ 31-17-3-1 to -25.

We affirm in part, reverse in part, and remand.

The relevant facts follow. Mother and Father married in August 1992 in the State of Washington. They lived in Washington until May 2003, when they relocated to Indiana. Mother's family lives in Washington, while Father's family lives in Indiana.

On November 14, 2003, Mother filed for dissolution of the parties' marriage in the Clinton County, Indiana, Superior Court. The dissolution petition alleged that Mother was "now pregnant and expecting the parties' child in February, 2004." Appellant's Appendix at 16. In the petition, Mother requested "a decree of dissolution of the marriage; custody of the minor child when born; child support; [and] disposition of the parties' real property, personal property, and debts; attorney fees...." *Id.* On November 21, 2003, Father filed a counter-petition for dissolution and also requested custody of the parties' minor child when born.

After filing the petition, Mother moved back to Washington, and the parties' daughter, A.S., was born in February 2004 in Washington. On May 7, 2004, the trial court held a hearing, ordered home studies, and set a date for the final hearing. On May 18, 2004, Father filed a request for visitation, which the trial court granted. On June 28, 2004, Mother's home study report was filed. The parties then attempted unsuccessfully to reconcile.

On March 8, 2005, Mother filed a petition to reschedule the provisional hearing, and the trial court set the hearing for March 29, 2005. On March 16, 2005, Father filed another request for visitation and requested that Mother bring A.S. to Indiana for the provisional hearing, and the trial court granted the request. The hearing was later continued, and on May 2, 2005, the trial court held a provisional

hearing and ordered that Mother and Father have joint custody of A.S. with Mother having "primary responsibility." Appellant's Appendix at 31. The trial court ordered that Father receive seven to ten days visitation every two months.

On June 7, 2005, Father filed another request for visitation, Mother responded to the motion, and the trial court ordered Father to pick a visitation date. In June 2005, the trial court also ruled on a motion to compel regarding discovery. On August 15, 2005, the trial court issued an order regarding child support. Also in August 2005, Leslie Douglass of Preservation Partners, Inc., requested guidance from the trial court regarding using audiotapes of telephone conversations between the parties in preparing Father's home study.

On September 16, 2005, Douglass filed a custody summary and recommended that Father move to Washington. Alternatively, Douglass recommended that Mother and Father share joint custody with Mother having physical custody and with Father continuing with weeklong visits every two months. On October 18, 2005, the parties participated in a mediation but were unable to reach a resolution of their disputes. On November 8, 2005, Father requested that the matter be set for final hearing, and the trial court set the final hearing for June 12, 2006.

On November 19, 2005, Mother filed an action in Snohomish County, Washington, for the establishment of a parenting plan. Upon the advice of his counsel that Washington did not have jurisdiction, Father did not attend the hearing in Washington. On December 6, 2005, the Washington court declined to exercise jurisdiction over A.S. "in light of the considerable litigation in Indiana." Appellant's Appendix at 91. The Washington court noted that Indiana had been properly exercising jurisdiction

over the matter. However, in January 2006, Mother filed a motion to reconsider the Washington court's order regarding jurisdiction. Mother also filed a motion for default. On February 3, 2006, the Washington court granted both motions and entered a temporary parenting plan, which provided that Mother would have custody of A. S., Father would have visitation with A.S. every other weekend within 50 miles of her home in Washington and visitation on specified holidays and during the summer in his home. On March 10, 2006, the Washington court entered a permanent parenting plan with similar provisions.

On April 6, 2006, in the Indiana trial court, Mother filed a motion to dismiss the custody and visitation issues, arguing that Washington had jurisdiction over the custody and visitation issues. After a hearing, the trial court issued the following order on May 23, 2006:

1. [Mother], while pregnant and a resident of Indiana, filed for Dissolution herein acknowledging her pregnancy.

2. [Mother] moved back to Washington prior to child's birth.

3. Child was *in utero* in Indiana and has resided since birth in Washington.

4. [Mother] waived any jurisdiction issue regarding custody by herself choosing to file for dissolution in Indiana.

5. Nonetheless, the Court still must be guided by the UCCJA.

6. If [Mother] did not waive jurisdiction, Washington clearly would have jurisdiction in that UCCJA does not apply to unborn children and Washington has been the child's only home state.

7. If jurisdiction was waived by [Mother], Washington lacked authority to exercise jurisdiction until this action

was terminated or stayed. UCCJA, I.C. 31–17–3–6.

8. Generally, Courts consult one another to determine which state provides a more appropriate forum for custody issues. Oddly, no contact was initiated in this matter.

9. Nonetheless, pursuant to I.C. 31–17–3–7, Court finds that Indiana is an Inconvenient Forum in that:

a. Washington has always been the child's home state and the parties lived in Washington for many years. [Mother] lived in Indiana only 6 months.

b. Washington has a closer connection with the child and with substantial evidence concerning her care, education and relationships. Witnesses and evidence concerning child are best available in Washington.

IT IS ORDERED that [Mother's] Motion to Dismiss Custody and Visitation Issues be granted pursuant to UCCJA and I.C. 31–17–3–7 in that Indiana is an Inconvenient Forum and the State of Washington is the more appropriate forum for determining custody and visitation issues.

Appellant's Appendix at 11–12. On July 13, 2006, the trial court issued a decree of dissolution, which provided in part: "Pursuant to this Court's May 23, 2006, Order all custody and visitation issues shall be heard and determined in the State of Washington where [Mother] and the child reside. Child support issues shall be heard and determined by the Clinton County, Indiana Superior Court # 1." Id. at 13.

## I.

■ We will first address Mother's cross appeal issue, which is whether the trial court abused its discretion by finding

that Mother waived any argument regarding A.S.'s home state under the UCCJA. Mother contends that the Indiana court did not have subject matter jurisdiction over A.S. because Washington was A.S.'s home state. The trial court found that "[Mother] waived any jurisdiction issue regarding custody by herself choosing to file for dissolution in Indiana." Id. at 11. Further, the trial court found: "If [Mother] did not waive jurisdiction, Washington clearly would have jurisdiction in that UCCJA does not apply to unborn children and Washington has been the child's only home state." Id.

■ The UCCJA sets out the method to determine jurisdiction. Christensen v. Christensen, 752 N.E.2d 179, 181 (Ind.Ct. App.2001). The trial court must first determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. Id. at 182. In determining whether a trial court has improperly exercised jurisdiction under the UCCJA, we apply an abuse of discretion standard. Id. An abuse of discretion will occur when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id.

In general, jurisdiction over a child custody matter is governed by Ind.Code § 31–17–3–3, which provides:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state be-

cause of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

  (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

  (3) the child is physically present in this state and the child has been abandoned; or

  (4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

"Home state" is defined as:

the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) month or other period.

Ind.Code § 31–17–3–2(5).

    Until recently, jurisdiction in Indiana was described as being comprised of three elements: (1) jurisdiction of the subject matter; (2) jurisdiction of the person; and (3) jurisdiction of the particular case. *State v. Willits,* 773 N.E.2d 808, 812 (Ind.2002). However, the Indiana Supreme Court has clarified that there are only two types of jurisdiction in Indiana-subject matter jurisdiction and personal jurisdiction. *K.S. v. State,* 849 N.E.2d 538, 540 (Ind.2006). The court held that the phrase " 'jurisdiction over a particular case' confuse[s] actual jurisdiction with legal error." *Id.* Following *K.S.,* the court observed that " 'jurisdiction over the particular case' is something of a misnomer and refers to failure to meet procedural requirements but does not constitute a limitation on subject matter jurisdiction in the sense that the court cannot hear cases of the same general class." *Packard v. Shoopman,* 852 N.E.2d 927, 929–930 (Ind. 2006). "[T]hese procedural errors are waived if not raised at the appropriate time." *Id.* (citing *K.S.,* 849 N.E.2d at 542).

Although Mother phrases the issue as subject matter jurisdiction, prior to *K.S.,* the Indiana Supreme Court held that "[t]he jurisdictional limitations imposed by the UCCJA are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case." *Williams v. Williams,* 555 N.E.2d 142, 145 (Ind.1990). Thus, under *Williams,* subject matter jurisdiction is not implicated here. Rather, jurisdiction over a particular case, which is

now described simply as legal error, is implicated, and such errors are subject to waiver.

Here, in November 2003, Mother filed a petition for dissolution, noted that she was currently pregnant, and requested custody of the child upon its birth. Father responded by filing a counter petition for dissolution and also requested custody of the child upon its birth. Over the next two years, the trial court entered a provisional order regarding custody, addressed numerous visitation issues, and ordered and received home studies. Mother did not raise any issue with respect to A.S.'s home state until November 2005, when she filed an action in the State of Washington. Moreover, she did not raise this issue with the Indiana court until she filed her motion to dismiss in April 2006.

We conclude that Mother waived any objection regarding A.S.'s home state under the UCCJA because she affirmatively requested that the trial court determine custody and because she failed to raise a challenge concerning A.S.'s home state under the UCCJA at the first opportunity. *See, e.g., Williams,* 555 N.E.2d at 145 (holding that the mother had waived any question regarding the authority of the court to decide the issue of custody by affirmatively engaging the Indiana courts to determine custody); *In re Custody of A.N.W.,* 798 N.E.2d 556, 561 (Ind.Ct.App. 2003) (holding that the father waived any objection to the trial court's jurisdiction of the case by failing to object at the first opportunity), *trans. denied; Christensen,* 752 N.E.2d at 184 (holding that the mother voluntarily and affirmatively engaged the

Indiana trial court to determine custody and expressly consented to the Indiana court's authority to determine custody). The trial court did not abuse its discretion when it concluded that Mother waived any argument that the State of Washington was A.S.'s home state under the UCCJA.

## II.

■ We next address the issue raised by Father. Father argues that the trial court abused its discretion by dismissing child custody and visitation issues based upon inconvenient forum. As noted above, the UCCJA, Ind.Code § 31–17–3–1 to –25, sets out the method to determine jurisdiction. *Christensen,* 752 N.E.2d at 181. The trial court must first determine whether it has jurisdiction, and, if it does, whether to exercise that jurisdiction. Id. at 182. We determined above, *see supra* Part I, that the Indiana trial court had jurisdiction. We must now determine whether the trial court abused its discretion when it determined not to exercise that jurisdiction based upon inconvenient forum.

A trial court that has jurisdiction under the UCCJA "to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Ind.Code § 31–17–3–7(a). Ind.Code § 31–17–3–7(c) sets out the factors a trial court should consider in determining whether Indiana is an inconvenient forum and provides:[1]

\* \* \* \* \*

(d) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either

---

1. The remainder of Ind.Code § 31–17–3–7 provides:
   (b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family or with the child and one (1) or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter.

court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

(e) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

(f) The court may decline to exercise its jurisdiction under this chapter if a custody determination is incidental to an action for dissolution of marriage or another proceeding while retaining jurisdiction over the dissolution of marriage or other proceeding.

(g) If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceed-

The purposes of the UCCJA as stated in section 1 are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that the courts of this state decline the exercise of jurisdiction when the child and his

ings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.

(h) Upon dismissal or stay of proceedings under this section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.

(i) Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction the court of this state shall inform the original court of this fact.

family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of custody decrees of other states; and

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.

Ind.Code § 31–17–3–1(a).

Father argues, in part, that the trial court abused its discretion by concluding that the most convenient forum for determining custody and visitation issues was the State of Washington.[2] We considered a similar issue in *Bowles v. Bowles*, 721 N.E.2d 1247 (Ind.Ct.App.1999). There, the father filed a petition for dissolution in Indiana in April 1996. 721 N.E.2d at 1248. The parties then attempted a reconciliation and moved to Ohio. *Id.* However, in December 1996, the mother took their child and moved to Illinois. *Id.* The mother then cross-petitioned for dissolution in the Indiana action. *Id.*

Over the next two years, Father and Mother participated in a number of hearings and a workshop in the Indiana action. In addition, Father, Mother, and G.B. [the child] participated in three custody evaluations by the court-appointed evaluator. On October 19, 1999[sic], the trial court set the final hearing on the dissolution petitions for March 4, 1999. On January 25, 1999, the court-appointed evaluator filed her final custodial evaluation. In the court-appointed evaluator's first two custody evaluations, she recommended that Mother should be granted custody. In her third and final report, she changed her opinion and recommended that Father be granted custody of G.B.

On February 25, 1999, Mother filed a motion to dismiss the Indiana action, claiming that Indiana was an inconvenient forum under the UCCJL. On March 2, 1999, Mother filed a petition for dissolution of marriage in a Cook County, Illinois court. The Indiana court denied Mother's motion to dismiss and held a final hearing on the dissolution on March 4, 1999. On April 12, 1999, the Honorable Carole K. Bellows of the Cook County, Illinois court sent the Indiana court a letter advising it of Judge Bellows' belief that the Illinois court had jurisdiction of this matter and would proceed. On May 3, 1999, the

---

2. Father also argues that his consent to the dismissal was required under Ind. Trial Rule 4.4(D) and that Mother waived her right to assert inconvenient forum. We need not address these arguments due to our resolution of Father's other argument.

However, we note that Ind.Code § 31–17–3–7, which governs inconvenient forum issues, allows a trial court to "decline to exercise its jurisdiction any time before making a decree...." Thus, inconvenient forum issues may be raised at any time before the trial court issues a decree. However, a parent's delay in asserting inconvenient forum may be a factor in deciding the issue. *See, e.g., Bowles*, 721 N.E.2d at 1250.

We also note that Mother describes the trial court action in ruling on the inconvenient forum issue as "sua sponte." Appellee's Brief at 20–21. However, the trial court's ruling was in response to Mother's motion to dismiss the custody and visitation issues. Consequently, the trial court's ruling was not sua sponte.

Indiana court declared its dissolution decree final, but yielded jurisdiction on the custody matter to the Illinois court. *Id.* at 1248–1249.

We analyzed the relevant factors and concluded that the Indiana trial court abused its discretion by yielding jurisdiction over the custody matter to the Illinois court. Specifically, we noted the following:

> The case has been pending before the Indiana court for three years. It is in G.B.'s best interest for the case to be resolved as quickly as possible. The Indiana court has already heard the evidence and stands ready to render a decision. No other court can claim this.
>
> Thus, Indiana is not an inconvenient forum. Further, the UCCJL states that it should be construed to promote the general purposes listed in IC 31–17–3–1. One such purpose is to "discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child." IC 31–17–3–1(a)(4). This purpose would be served by allowing the Indiana court to resolve this controversy immediately. Moreover, in the case of a conflict between promoting an orderly system of decisions and protecting the best interest of the child, the UCCJL makes the best interest of the child predominate. *Clark v. Clark,* 404 N.E.2d 23, 33 (Ind.Ct.App. 1980). Thus, the Indiana court should have continued to exercise its jurisdiction even though the Illinois court disagreed with that decision. G.B.'s best interest lies with the Indiana court continuing to exercise jurisdiction and rendering a decision expeditiously.
>
> Further, there is no state with a closer connection to this controversy than Indiana. Although the parties now all live out of state, the Indiana court has already invested years of resources in resolving this matter. Further, a court-appointed evaluator has prepared three separate evaluations after interviewing and observing the parties. For the final evaluation, Mother even brought her other children, G.B.'s half-siblings, who live in her home so the evaluator could observe their relationships with G.B. This consideration also weighs in favor of not finding Indiana an inconvenient forum.
>
> Moreover, the parties have not agreed to have the custody issue determined by the Illinois court. Father objects to allowing the Illinois court determine the matter, so this statutory consideration weighs in favor of retaining jurisdiction in Indiana.

Mother argues that Illinois is the convenient forum to exercise jurisdiction in this case because G.B. has lived there for the past two years and evidence about his care can be found there. Mother's argument fails because this case has progressed beyond the stage of the proceedings at which such a consideration is relevant. Indiana counsel for both Mother and Father have already gathered and presented the evidence about G.B.'s custody and care to the Indiana court, which has heard such evidence and is ready to render a decision. This consideration weighs in favor of Indiana as a convenient forum.

Mother contends that Illinois is the convenient forum because she and G.B. live in Illinois. However, Mother engaged in the Indiana action for two years after moving to Illinois without complaining that Indiana was an inconvenient forum. Moreover, Father lives in Ohio. Illinois is not a convenient forum for him. Further, the home state of the child is only one of a number of statutory considerations in the inconvenient forum analysis, all of which factor

into the larger issue of what is in the best interests of the child.

In this case, Mother seemed prepared to allow the Indiana court to proceed until she received the final, unfavorable custody evaluation. One month later, and more than two years after she counter-petitioned in Indiana, she filed her petition for divorce in Illinois. Mother's Illinois filing came on the eve of the Indiana trial, at which she appeared and presented evidence seven days later. The timing and sequence of events in this case gives the appearance of an attempt to manipulate the UCCJL to gain a favorable result. We cannot allow such manipulation to be rewarded. The two primary purposes of the UCCJL are to discourage forum shopping and to protect the best interests of the child. *Clark*, 404 N.E.2d at 33. Both of these purposes would be served by the Indiana court continuing to exercise jurisdiction over this case.

*Id.* at 1249–1250.

Here, the trial court found that Washington was a more convenient forum for determining custody because: (1) "Washington has always been the child's home state and the parties lived in Washington for many years. [Mother] lived in Indiana only 6 months"; and (2) "Washington has a closer connection with the child and with substantial evidence concerning her care, education and relationships. Witnesses and evidence concerning child are best available in Washington." Appellant's Appendix at 11–12.

We acknowledge that A.S. has always lived in Washington, that A.S. has a closer connection with Washington, and that substantial evidence concerning her care, education, and relationships is more readily available in Washington. However, we must also note other factors that are relevant here. First, the custody matter had

already been pending in Indiana for two years. Mother initiated the dissolution action in Indiana and asked the Indiana court to rule on custody. At the time Mother decided that Indiana was an inconvenient forum, the Indiana trial court had already set a date for the final hearing, custody evaluations had been performed, custody and visitation issues had been addressed in a provisional hearing, and the trial court had already addressed numerous visitation problems. The Indiana trial court stood ready to make a final determination. A.S.'s best interests would have been furthered by the Indiana court retaining jurisdiction and completing its custody determination expeditiously.

Additionally, the parties have not agreed to have the custody issue determined by the Washington court. Father lives in Indiana and objects to the Washington court determining custody and visitation.

Mother contends that the record does not demonstrate any forum shopping, which the UCCJA was intended to discourage. According to Mother, she had already received a favorable custody recommendation, and there is no evidence that her filing the Washington action was an attempt to obtain a more favorable result. We must disagree.

On May 2, 2005, the trial court held a provisional hearing and ordered that Mother and Father have joint custody of A.S. with Mother having "primary responsibility." Appellant's Appendix at 31. The trial court ordered that Father receive seven to ten days visitation every two months. On September 16, 2005, Douglass filed a custody summary and recommended that Father move to Washington. Alternatively, Douglass recommended that Mother and Father share joint custody with Mother having physical custody and with Father continuing with weeklong visits every two months. Douglass noted

that Mother and Father had "extreme difficulty" in "trying to agree on visitation arrangements" and recommended that the trial court spell out the visitation arrangements in detail. Appellant's Appendix at 75.

On November 19, 2005, Mother filed an action in Snohomish County, Washington, for the establishment of a parenting plan. Although the Washington court initially denied Mother's petition based upon Indiana having jurisdiction, on February 3, 2006, the Washington court entered a temporary parenting plan, which provided that Mother would have sole custody of A.S., Father would have visitation with A.S. every other weekend within 50 miles of her home in Washington and visitation on specified holidays and during the summer in his home. On March 10, 2006, the Washington court entered a permanent parenting plan with similar provisions.

The Washington court clearly gave Mother a more favorable custody arrangement and visitation schedule than the Indiana court had ordered or than Douglass had recommended. The timing and sequence of events in this case give the appearance that Mother was attempting to manipulate the UCCJA to gain a favorable result. As in *Bowles,* "[w]e cannot allow such manipulation to be rewarded." *Bowles,* 721 N.E.2d at 1250. We conclude that, as in *Bowles,* the trial court erred by granting Mother's motion to dismiss the custody and visitation issues based upon inconvenient forum. See, *e.g., id.*

For the foregoing reasons, we affirm the trial court's determination that Mother waived any argument regarding A.S.'s home state, we reverse the trial court's grant of Mother's motion to dismiss the custody and visitation issues, and we remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

MAY and BAILEY, JJ., concur.