912 N.E.2d 866 (2009)
A.J.L., Appellant-Respondent,
v.
D.A.L., Appellee-Petitioner,[1]
J.K.C. and T.C., Appellees-Intervenors.
No. 43A04-0902-CV-106.
Court of Appeals of Indiana.
September 9, 2009.
*868 Beverly S. Peters, Beverly S. Peters and Associates, P.C., Elkhart, IN, Attorney for Appellant.
Christopher D. Kehler, Kehler Law Firm, PC, Warsaw, IN, Attorney for Appellees.

OPINION
NAJAM, Judge.

STATEMENT OF THE CASE
A.J.L. ("Mother") appeals from the trial court's decree dissolving her marriage to D.L. ("Father"), following a final hearing. In that decree, the court awarded custody of Mother and Father's children ("the Children") to Intervenors, J.K.C. ("Aunt") and T.C. ("Uncle"). Mother presents the following issues for review:
1. Whether the trial court erred when it concluded that Aunt and Uncle are the de facto custodians of the Children.
2. Whether the evidence is sufficient to support the trial court's award of custody of the Children to Aunt and Uncle.
We affirm.

FACTS AND PROCEDURAL HISTORY
Mother and Father have three children: I.R.L., born June 24, 1997; T.L.L., born August 19, 1998; and J.C.L., born May 31, 2002. Mother and Father married on July 3, 2002. Father is the nephew of Aunt and Uncle. Aunt and Uncle regularly assisted Mother and Father with the Children by providing childcare, which included having the children at Aunt and Uncle's home for extended overnight stays. In 2002, on one such occasion, Aunt and Uncle kept the children for a week for the duration of Mother and Father's trip to Las Vegas to get married.
Father filed a pro se petition for dissolution on January 5, 2006. The Children lived with Aunt and Uncle fifty percent of the time from January 2006 through February 2007 and sixty to seventy percent of the time from February 2007 to February 2008. During those periods, Aunt and Uncle provided the Children with food, clothes, and medical care and attended to their educational needs. Other family members also helped with childcare and medical care during the period from 2006 to 2008. Throughout those periods, Mother had several different residences and lived with several different people, sometimes with several different adults at one time, and she did not always have utilities. The Children spent some weekends and other periods of time with Mother in 2006 and 2008.
On May 9, 2008, Aunt and Uncle filed a Verified Petition for Emergency Custody Order and Temporary Restraining Order, a Verified Petition to Intervene, and a Verified Petition for Custody. On May 13, 2008, Mother filed her Motion for Specific Parenting Time. On June 24, 2008, the court entered an order appointing a Court Appointed Child Advocate ("CASA"). The CASA office responded in writing that there was insufficient time before the final hearing to prepare a CASA report. As a result, on June 30, the court vacated the order appointing a CASA.
The final hearing commenced on July 24, 2008, and continued on August 12, August 15, and August 29. On December 12, 2008, the court entered its Decree of Dissolution, which provides in part as follows:
The Court FURTHER FINDS that [Aunt and Uncle], the intervening parties herein, are the aunt and uncle of [Father] and that the intervening parties herein are and have been the *869 de[]facto custodians of the minor children herein as defined by I.C. XX-X-X-XX.5. The Court further finds by clear and convincing evidence that the minor children herein have been cared for by the de[]facto custodians, namely [Aunt and Uncle], for more than one year prior to the commencement of the child custody proceedings herein, and that [Aunt and Uncle] have been the primary caregivers for and financial support of the children during that time. Therefore, the Court further finds that it is appropriate to consider the factors set forth in I.C. XX-XX-X-X.5 regarding child custody in making a determination as to the best interests of the minor children herein.
The Court FURTHER FINDS that [Father and Mother] have a history of abusing illegal drugs, that [Mother] has not maintained a stable residence nor stable employment, that [Mother] does not have a valid driver's license, and that [Mother] is unable to provide adequate support or care for the minor children. The Court further finds that [Mother] placed the minor children in the care of [Aunt and Uncle], the intervening parties herein, and allowed them to remain in the custody of the de[ ]facto custodians for significant periods of time, thereby allowing the children to be cared for, nurtured and supported by the de[ ]facto custodians. The Court further finds that [Mother's] long acquiescence and voluntary relinquishment of the minor children herein has left the intervening parties as the de facto custodians and the lives and affections of the children and the Intervening Parties [are] completely interwoven.
The Court FURTHER FINDS that [Mother] is not now pregnant; and that there are three (3) minor children of the marriage, namely: [I.R.L.], born on June 24, 1997; [T.L.L.], born on August 19, 1998; and [J.C.L.], born on May 13, 2002, and that it is in the best interest of the minor children that [Aunt and Uncle], the Intervening Parties, have the care, custody and control of the minor children, subject to the [Mother and Father's] right of reasonable visitation in accordance with the General and Standing Order of the Court Relating to Child Custody, Parenting Time and Support, dated January 6, 2004,[2] which is annexed to this decree and the parties should be ordered to strictly comply therewith.
Appellant's App. at 19-20, 22. Based on those findings, the court awarded custody of the Children to Aunt and Uncle. Mother now appeals.

DISCUSSION AND DECISION

Issue One: De Facto Custodians
Mother contends that the trial court erred when it concluded that Aunt and Uncle are the de facto custodians of the Children. In particular, Mother alleges that the Children "had not resided with the [Aunt and Uncle] for the requisite one-year period required to establish themselves as de facto custodians." Appellant's Brief at 9. We cannot agree.
Indiana Code Section 31-9-2-35.5 defines "de facto custodian" in relevant part as follows:
"De facto custodian", for purposes of IC 31-14-13 [paternity cases], IC 31-17-2 [custody and visitation cases], and IC 31-34-4 [juvenile cases], means a person *870 who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least ... one (1) year if the child is at least three (3) years of age.
Any period after a child custody proceeding has been commenced may not be included in determining whether the child has resided with the person for the required minimum period. The term does not include a person providing care for a child in a foster family home (as defined in IC XX-X-X-XX.9).
Before custody can be awarded to a third party, that third party must demonstrate de facto custodian status by clear and convincing evidence. See Ind.Code § 31-17-2-8.5. In reviewing a judgment requiring proof by clear and convincing evidence, an appellate court may not impose its own view as to whether the evidence is clear and convincing, but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence. In re Guardianship of B.H., 770 N.E.2d 283, 288 (Ind.2002).
At the final hearing, Aunt testified that the Children had resided with her and Uncle fifty percent of the time from January 2006 to February 2007 and sixty to seventy percent of the time from February 2007 to February 2008.[3] The Children lived with Mother for two to three weeks in February 2008, then returned to living with Aunt and Uncle in March 2008. Father also testified that the Children have "[p]retty much" lived with Aunt and Uncle since January 2006. Transcript at 12.
During the periods that the Children resided with Aunt and Uncle, Aunt and Uncle provided for the Children's food, and, together with other family members, provided for the Children's clothing and medical expenses. Aunt and Uncle also paid for babysitters they hired to watch the children when Aunt and Uncle were out. Mother did not provide financial assistance during those periods. When the Children were with Mother, Aunt and Uncle occasionally provided food or other household items, they paid one of Mother's utility bills, and Aunt occasionally gave Mother "a dab of money." Id. at 361. Aunt and Uncle also tended to the Children's educational needs. Aunt met with I.R.L.'s teacher twenty-five to thirty times from February 2008, when I.R.L. changed schools, to May 2008 when the school year ended to address that child's failing grades. And Uncle regularly helped I.R.L. with his math homework.
Mother argues that Aunt and Uncle did not establish the one-year residency requirement in Indiana Code Section 31-9-2-35.5. Specifically, Mother argues that Aunt and Uncle were merely babysitters and that she had "coordinat[ed] with the babysitters [Aunt and Uncle] in the form of a schedule." Appellant's Brief at 9. But the evidence is sufficient to show by clear and convincing evidence that the Children resided with Aunt and Uncle a majority of the time for unspecified non-consecutive periods over the preceding two years and that Aunt and Uncle provided the basic necessities for the Children during that period. See In re Custody of J.V., No. 27A02-0903-JV-232, ___ N.E.2d ___, 2009 WL 1939798, at *3, 2009 Ind.App. LEXIS 943, at *7-*8 (July 7, 2009), not *871 yet certified. Mother's contention amounts to a request that we reweigh the evidence, which we will not do. The trial court did not err when it concluded that Aunt and Uncle are the de facto custodians of the Children.

Issue Two: Sufficiency of Evidence
Mother next contends that the evidence is insufficient to support the award of custody to Aunt and Uncle as de facto custodians. Specifically, Mother argues that Aunt and Uncle have not rebutted the presumption that favors awarding custody of children to the natural parent. Again, we cannot agree.
Indiana Code Section 31-17-2-8 governs custody determinations and provides:
The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
(A) the child's parent or parents;
(B) the child's sibling; and
(C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
(A) home;
(B) school; and
(C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in [Indiana Code Section 31-17-2-8.5(b).]

(Emphasis added).
Once a court determines a "de facto custodian" exists and that individual has been made a party to a custody proceeding, in addition to the usual "best interests" of the child factors contained in Indiana Code Section 31-17-2-8, the court shall consider the following factors in determining the child's best interests:
(1) The wishes of the child's de facto custodian.
(2) The extent to which the child has been cared for, nurtured, and supported by the de facto custodian.
(3) The intent of the child's parent in placing the child with the de facto custodian.
(4) The circumstances under which the child was allowed to remain in the custody of the de facto custodian, including whether the child was placed with the de facto custodian to allow the parent seeking custody to:
(A) seek employment;
(B) work; or
(C) attend school.
Ind.Code § 31-17-2-8.5(b). "The court shall award custody of the child to the child's de facto custodian if the court determines that it is in the best interests of the child." Ind.Code § 31-17-2-8.5(d).
We have described the standard of review in natural parent-third party custody disputes as follows:
First, there is a presumption in all cases that the natural parent should have custody *872 of his or her child. The third party bears the burden of overcoming this presumption by clear and cogent evidence. Evidence sufficient to rebut the presumption may, but need not necessarily, consist of the parent's present unfitness, or past abandonment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. However, a general finding that it would be in the child's "best interest" to be placed in the third party's custody is not sufficient to rebut the presumption. If the presumption is rebutted, then the court engages in a general "best interests" analysis. The court may, but is not required to, be guided by the "best interests" factors listed in Indiana Code Sections 31-14-13-2 [custody following paternity determination], 31-14-13-2.5 [custody following paternity determination, including de facto custodian], 31-17-2-8 [custody in dissolution], and 31-17-2-8.5 [custody in dissolution, including de facto custodian], if the proceeding is not one explicitly governed by those sections.
If a decision to leave or place custody of a child in a third party, rather than a parent, is to be based solely upon the child's "best interests," as opposed to a finding of parental unfitness, abandonment, or other wrongdoing, such interests should be specifically delineated, as well as be compelling and in the "real and permanent" interests of the child.
In re L.L. & J.L., 745 N.E.2d 222, 230 (Ind.Ct.App.2001) (some emphasis original, internal citations omitted), trans. denied.
"An appellate court should not disturb a trial court determination awarding child custody to a non-parent unless `there is no evidence supporting the findings or the findings fail to support the judgment.'" Huss v. Huss, 888 N.E.2d 1238, 1245 (Ind.2008) (quoting In re B.H., 770 N.E.2d at 287). The reviewing court does not reweigh the evidence, but considers only the evidence favorable to the trial court's judgment. Id. A challenger must show that the trial court's findings are clearly erroneous. Id. In the review of a non-parent custody award, which requires clear and convincing evidence:
[A]n appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.
Id. (quoting In re B.H., 770 N.E.2d at 287 (internal citations omitted)).
Here, the trial court found in the Decree that Mother's "long acquiescence and voluntary relinquishment of the minor children herein has left the intervening parties as the de facto custodians and the lives and affections of the children and the Intervening Parties [are] completely interwoven" and that awarding custody to Aunt and Uncle was in the best interest of the Children. Appellant's App. at 19. The evidence in the record supports that determination.
Mother conceded at trial that Aunt and Uncle had cared for the Children for extended periods of time and that she allowed the children to remain in Aunt and Uncle's care, at least Monday through Thursday each week, to attend Leesburg schools. Aunt testified that the Children lived with them fifty percent of the time from January 2006 through February 2007, sixty to seventy percent of the time from February 2007 to February 2008, and *873 full-time since February 2008. And Father testified that the Children had lived "pretty much" with Aunt and Uncle since January 2006. Transcript at 12. Mother characterizes the Aunt and Uncle's care of the Children as babysitting and emphasizes on appeal that the Children's residency with Aunt and Uncle was on a schedule at least part of the time. Mother's argument amounts to a request that we reweigh the evidence, which we cannot do. See Huss, 888 N.E.2d at 1245. The evidence supports a finding that Mother voluntarily relinquished the Children to the care of Aunt and Uncle.
The evidence also shows that the Children are bonded with Aunt and Uncle. Father testified that I.R.L. had "temperamental problems" when he lived with his parents, but that the child "is a lot happier, he's settled down completely" and his behavior has improved "100 percent" since living with Aunt and Uncle. Transcript at 35. Uncle testified that I.R.L. "looks forward to [Uncle] coming home every night and helping him with his math" homework. Id. at 450. Uncle also testified that he and J.C.L. "are very bonded to each other. I think through our years of being exposed to each [other] since he was a newborn baby, he has grown to think of me as a father[,]" and Uncle thinks of J.C.L. as a son. Id. at 451. And as of the time of the final hearing, T.L.L. and Uncle had "gotten a little closer over the past few months." Id. Aunt also testified that she had a bond with the Children.
Aunt and Uncle had the burden to rebut the presumption that the Children should be in the custody of their natural parent, Mother. See In re L.L. & J.L., 745 N.E.2d at 230. Again, "[e]vidence sufficient to rebut the presumption may, but need not necessarily, consist of the parent's... past abandonment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." Id. Here, the evidence that Mother left the Children in the care and control of Aunt and Uncle for long periods of time, that the Children are bonded with Aunt and Uncle, and the reasonable inferences from that evidence support the trial court's conclusion that Mother had voluntarily relinquished the Children to Aunt and Uncle and that the lives and affections of the Children and Aunt and Uncle are "completely interwoven."
Nonetheless, Mother argues that there is "no evidence to indicate that [she] intended to abandon her child[ren] to [Aunt and Uncle]. Nor was there any evidence presented that a strong emotional bond had formed between [Aunt and Uncle] and the children." Appellant's Brief at 14. Mother's argument amounts to a request that we reweigh the evidence. We recognize that there was evidence before the trial court which might have supported the Mother's contentions. However, the issue before us is not whether a different trier of fact could have reasonably reached a conclusion other than that reached by the trial court. "It is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there will be a basis for reversal." Harris v. Smith, 752 N.E.2d 1283, 1290 (Ind.Ct.App.2001). Here, the evidence and reasonable inferences supporting the judgment do not positively require a conclusion different from that reached by the trial court.[4]
*874 Mother also contends that the trial court "employed an incorrect standard in determining the custody of the minor children." Appellant's Brief at 12. In support, she refers to the Court's statement that the court "interpret[ed] the case law in that each party, and/or intervening parties, seeking custody of these [C]hildren [has] the burden to show to the Court by a fair preponderance of the evidence that their position will be in the best interest of the minor [Children]." Transcript at 114. Based on that statement, Mother concludes that the trial court held Aunt and Uncle to "a lower, preponderance of evidence burden of persuasion" instead of requiring them "to overcome the parental presumption by clear and convincing evidence[.]" Appellant's Brief at 12.
Mother is correct that Aunt and Uncle were required to rebut the presumption that Mother, as the natural parent, should have custody of the Children by clear and convincing evidence. See In re L.L. & J.L., 745 N.E.2d at 230. But the trial court's statement quoted above refers to the burden to show the best interest of the Children, not to overcome the parental presumption. That statement was made in response to Mother's argument that witnesses were not being taken in the order required by a local rule, under which the party with the burden of persuasion should present evidence first. We agree with Mother that the trial court misstated the law regarding Mother's burden to show to the Court that her position was in the best interest of the Children.
In the Decree, the trial court stated that Aunt and Uncle had the burden to prove by clear and convincing evidence that they were the de facto custodians of the Children. As discussed above, Aunt and Uncle met that burden by showing that they had been the primary caretakers of the Children for at least one year. The same evidence, that Aunt and Uncle had been the primary caretakers of the Children for at least the past year, also supports the trial court's finding as to Mother's "voluntary relinquishment of the minor children[.]" Appellant's App. at 19. The trial court also found that the affections between Aunt and Uncle and the Children were "completely interwoven." Id. Although the trial court did not specifically state that Aunt and Uncle met the burden to show that emotional bond by clear and convincing evidence, there is no indication that the court applied a lesser burden. We assume that the trial court found that the burden was met by clear and convincing evidence. See Donaldson v. State, 904 N.E.2d 294, 300 (Ind.Ct.App.2009) (assuming trial court applied correct burden of proof). Thus, clear and convincing evidence supports the trial court's conclusion that Aunt and Uncle rebutted the presumption that Mother, as the natural parent, should have custody of the Children.[5]

*875 Conclusion
The trial court did not err when it concluded that Aunt and Uncle are the de facto custodians of the Children. Clear and convincing evidence shows that Mother left the Children in Aunt and Uncle's care for significant periods of time starting in January 2006. The Children lived with Aunt and Uncle fifty percent of the time from January 2006 to February 2007 and sixty to seventy percent of the time from February 2007 to February 2008. During those periods, Aunt and Uncle provided for the care and needs of the Children without financial contribution from Mother. Mother's argument that Aunt and Uncle were merely babysitters is a request that we reweigh the evidence, which we will not do.
And the trial court did not abuse its discretion when it awarded custody of the Children to Aunt and Uncle as de facto custodians. Again, clear and convincing evidence shows that Mother voluntarily relinquished care and control of the Children to Aunt and Uncle for significant periods of time starting in January 2006. Mother's argument challenging the award again amounts to a request that we reweigh the evidence. We cannot. Clear and convincing evidence shows that Mother voluntarily relinquished the Children to Aunt and Uncle and that the affections between the Children and Aunt and Uncle were completely interwoven. Such evidence is sufficient to rebut the presumption that custody should be placed with Aunt and Uncle, as de facto custodians, over Mother, the natural parent.
Finally, Mother has not shown that the trial court applied an incorrect burden for Aunt and Uncle to rebut the presumption that Mother, as the natural parent, should have custody of the Children. While the Decree is silent as to the burden of proof on that issue, as stated above, Mother's abandonment of the Children to Aunt and Uncle was proved by clear and convincing evidence. And the probative evidence and reasonable inferences supporting the judgment show that a reasonable trier of fact could have concluded that the affections of the Children and Aunt and Uncle were completely interwoven. Thus, Aunt and Uncle rebutted the parental presumption by clear and convincing evidence. The trial court did not abuse its discretion when it awarded custody of the Children to Aunt and Uncle.
Affirmed.
KIRSCH, J., and BARNES, J., concur.
NOTES
[1] D.A.L. is not seeking relief on appeal. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.
[2] The parties have not included in the record on appeal a copy of the custody, parenting time and support order that the court "annexed" to the Decree. The parties do not explain, nor can we discern from the record on appeal, why there is a parenting time and support order that predates the dissolution proceedings.
[3] Mother is correct the Children's residency with the Intervenors following the filing of their petition to intervene and to establish de facto custodian status may not be considered in determining whether the children have met the one-year residency requirement under Indiana Code Section 31-9-2-35.5.
[4] Through various examples and citations to the evidence, Mother argues that the evidence does not show that she was unfit to have custody of the Children. But the trial court did not award custody to Aunt and Uncle due to Mother's unfitness. Instead, the trial court based its custody decision on its finding that Mother had voluntarily relinquished, or abandoned, the Children to Aunt and Uncle. Thus, we need not address Mother's contentions that the evidence does not support a finding that she was unfit.
[5] Mother does not argue that the trial court applied a lower burden of proof regarding its finding that custody with Aunt and Uncle was in the best interest of the Children. Nevertheless, we observe that the trial court, in the part of the Decree addressing the parental presumption, found that Mother lacked a stable residence, lacked stable employment, had no valid driver's license, and was unable to provide adequate support or care for the Children. Absent any contrary indication, we assume those findings are based on clear and convincing evidence. See Donaldson, 904 N.E.2d at 300. And that evidence supports the determination that awarding custody to Aunt and Uncle is in the best interest of the Children.