

FILED

Jan 25 2018, 9:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Crystal G. Rowe
Alyssa C.B. Cochran
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Jenny R. Buchheit
Derek R. Molter
Sean T. Dewey
Ice Miller, LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Hays and Caryn Hays, <br> *Appellants-Intervenors,* <br><br> v. <br><br> Amanda Hockett, <br> *Appellee-Petitioner.* | January 25, 2018 <br><br> Court of Appeals Case No. <br> 62A01-1612-DR-2910 <br><br> Appeal from the Perry Circuit Court <br><br> The Honorable Mark R. McConnell, Special Judge <br><br> Trial Court Cause No. <br> 62C01-1512-DR-522 |

**Mathias, Judge.**

[1] Michael and Caryn Hays (the "Hayses") appeal the trial court's order granting custody of B.H. to his mother, Amanda Fisher (f/k/a Amanda Hockett). The Hayses also appeal the trial court's award of $1,365.00 in attorney fees as being inadequate.

[2] We affirm.

# Facts and Procedural History[1]

Amanda Fisher ("Mother") and Brandon Hockett ("Father") were married on May 4, 2011, in Tell City, Indiana. A little over one year later, Mother gave birth to their son B.H. Approximately three to four months after B.H. was born, the family moved to Oklahoma where they moved in with Father's mother and step-father, the Hayses. In December 2012, Mother and Father moved out of the Hayses' home into a nearby apartment. After Mother and Father moved, the Hayses continued to regularly watch and take care of B.H.

In February 2015, Mother and Father moved back to Indiana. Mrs. Hays picked up B.H. in May 2015 from Indiana and took him back to Oklahoma so that Mother and Father could work on their marriage. B.H. returned to Indiana to stay with Mother and Father towards the end of June 2015. And on August 24, 2015, Mrs. Hays again picked up B.H. and took him back to Oklahoma. This was only supposed to be a short visit; however, it was prolonged so that Mother and Father could continue to work on their marriage.

Mother left the home she shared with Father on October 10, 2015, and moved in with a friend. The Hayses were scheduled to return B.H. to Indiana in late November, but they postponed the trip due to weather. On December 12,

---

[1] The "Statement of Facts" section of the Hayses' brief presents the facts in a manner that emphasizes specific testimony and portions of the record favorable to their case. We direct the Hayses' counsel to Indiana Appellate Rule 46(A)(6)(b), which states in pertinent part that "[t]he facts shall be stated in accordance with the standard of review appropriate to the judgment," and encourage them to comply with this rule in future appeals.

Father left Indiana and returned to live with the Hayses in Oklahoma. Two days later, Mother filed for divorce from Father along with a notice of a provisional hearing in Perry County, Indiana. On December 21, Father filed for divorce in the District Court, First Judicial District of Texas County in Oklahoma (the "Oklahoma court"). Ten days later, Father filed an objection to conducting the provisional hearing and a motion to dismiss for lack of jurisdiction in Perry County, Indiana.

[6] The Oklahoma court held a hearing on Father's divorce petition on January 14, 2016, in which Father was represented by counsel and both he and Mrs. Hays testified. The next day, the Oklahoma court found that neither Oklahoma nor Indiana met the requirements to qualify as B.H.'s home state for jurisdictional purposes. The court also found that B.H. had significant connections in both Indiana and Oklahoma. Therefore, the Oklahoma court abstained from exercising jurisdiction in the case until it heard from Special Judge McConnell whether Perry County would exercise jurisdiction under the "first in time rule," because Mother filed for divorce first.[2] A January 20 CCS entry indicates that

---

[2] The Oklahoma court also remarked:

> [B]ased on [Father's] testimony there is a serious question as to whether [Father] had been a resident of the State of Oklahoma for six (6) months and a resident of the county for thirty (30) days prior to the filing of the Petition on December 21, 2015. Residency in the State of Oklahoma for six months prior to the filing of the Petition is a prerequisite to invoking the jurisdiction of this court.

Appellant's App. Vol. II, p. 28.

the Perry County court received communication from Oklahoma, and that it would exercise jurisdiction over the case.

[7] The trial court held the provisional hearings on February 17 and March 30. One day prior to the first hearing, the Hayses filed a motion to intervene in order to seek custody of B.H. On April 12, the trial court issued its provisional order in which it granted the Hayses' motion to intervene and awarded temporary custody of B.H. to the Hayses. In its order, the court stated, "Ideally at some point in the future one or both of the parents will establish that they are fit to have custody and that such an order would be in the child's best interest. But, that is not currently the case." Appellant's App. Vol. II, p. 55.

[8] Final hearings were held on September 23 and November 17. On November 21, the trial court issued a detailed decree of dissolution in which it dissolved the marriage between Mother and Father and awarded legal custody of B.H. to Mother. The trial court recognized the Hayses' impact on B.H., set a gradual transfer of custody schedule, and specified that the Hayses should remain a part of B.H.'s life.

[9] On January 10, 2017, the Hayses filed, with this court, a motion to stay the child custody order pending appeal, or in the alternative, to order Mother to provide the Hayses with an all-purpose consent-to-treat form to enable B.H. to receive medical treatment while in their care. On February 3, this court denied the motion to stay, but remanded for the trial court to order Mother to provide the Hayses with an all-purpose consent-to-treat form. Mother provided a

consent form on February 13, which the Hayses argued was a limited-consent form, and not an all-purpose consent-to-treat form. As a result, on February 16, the Hayses filed a motion with this court to compel Mother to provide the proper form. The Hayses also requested attorney fees spent pursuing the motion to compel. On February 21, the motions panel of this court issued an order granting the Hayses' request and ordered Mother to provide the all-purpose consent-to-treat form. The order also awarded attorney fees and remanded for the trial court to determine a reasonable amount.

[10] On April 21, the trial court held a remand hearing where counsel for the Hayses produced an attorney-fee invoice for $1,868.50 for pursuing the motion to compel. At the hearing, counsel for the Hayses also submitted an affidavit indicating an additional $4,495.50 in attorney fees spent on the motion to compel remand hearing. In all, the Hayses' counsel requested $6,364.00 in fees. On May 18, the trial court issued an order awarding $1,365.00 in attorney fees to be paid by the Mother in weekly installments of $30.

[11] The Hayses now appeal the custody determination and the amount of attorney fees.

## I. Jurisdiction Under the Uniform Child Custody Jurisdiction Act

[12] The Hayses first argue that the trial court's custody determination should be reversed because Indiana does not have subject matter jurisdiction under the

Uniform Child Custody Jurisdiction Act ("UCCJA").[3] Specifically, the Hayses assert that "Oklahoma is the appropriate forum to decide B.H.'s custody." Appellant's Br. at 41. A decision to retain or relinquish jurisdiction under the UCCJA is reviewed for an abuse of discretion. *Novatny v. Novatny*, 872 N.E.2d 673, 679 (Ind. Ct. App. 2007). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the circumstances before it, or if the court has misinterpreted the law. *Tamasy v. Kovacs*, 929 N.E.2d 820, 826 (Ind. Ct. App. 2010).

[13] We initially note that there is a conflict in the case law regarding whether the UCCJA confers subject matter jurisdiction; therefore, we take this opportunity to address the issue. In 1990, in *Williams v. Williams*, 555 N.E.2d 142 (Ind. 1990), our supreme court was adamant that the UCCJA did not confer subject matter jurisdiction.

> The source of this competency to decide child custody matters is found in Ind. Code § 31–1–11.5–20 and is an incidental grant of specific authority within the general grant of subject matter jurisdiction to hear actions for dissolution and child support. The

---

[3] Before addressing the UCCJA, the Hayses contend that the trial court committed reversible error for failing to provide them with an opportunity to be heard pursuant to the requirement of Indiana Code section 31-21-4-2. Section 31-21-4-1 states that "[a]n Indiana court may communicate with a court in another state concerning a proceeding arising under [the UCCJA]." Section 31-21-4-2 then explains that the court may allow the parties to participate in the communication; however, if they are not able to participate, then "the parties must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made." The requirements of section 31-21-4-2 were met here when the Oklahoma court held a hearing in which both Father and Mrs. Hays testified, and counsel presented argument. Appellant's App. Vol. II, p. 26. The hearing was held before the Oklahoma court decided to abstain from exercising jurisdiction until it heard from Special Judge McConnell, who then proceeded to accept jurisdiction over the case. *Cf. Harris v. Harris*, 922 N.E.2d 626, 640 (Ind. Ct. App. 2010) (finding reversible error where father *never* had an opportunity to present facts or legal arguments before a decision on jurisdiction was made).

jurisdictional limitations imposed by the UCCJA are not equivalent to declarations of subject matter jurisdiction, but rather are refinements of the ancillary capacity of a trial court to exercise authority over a particular case. This exercise of authority is waivable.

*Id.* at 145 (citation omitted).[4]

[14]     In 2000, our supreme court held that "[j]urisdiction is comprised of three elements: (1) jurisdiction of the subject matter; (2) jurisdiction of the person; and (3) jurisdiction of the particular case. The question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs." *Troxel v. Troxel*, 737 N.E.2d 745, 749 (Ind. 2000) (citations omitted). In 2006, our supreme court refined the *Troxel* court's holding and explained that Indiana trial courts possess two kinds of jurisdiction, subject matter jurisdiction and personal jurisdiction. *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006). And that "phrases recently common to Indiana practice, like 'jurisdiction over a particular case,' confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations." *Id.* The *K.S.* court then explained, "*Real* jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus,

---

[4] Indiana Code section 31-1-11.5-20, cited by the *Williams* court, was repealed in 1997, and has subsequently been replaced with the substantially similar UCCJA which is now codified in Indiana Code section 31-21.

characterizing other sorts of procedural defects as 'jurisdictional' misapprehends the concepts." *Id*. at 542 (emphasis in original).

[15] In light of our supreme court's decisions in *Williams*, *Troxel*, and *K.S.*, from 1990 to 2008, this court consistently held that jurisdiction under the UCCJA does not equate to subject matter jurisdiction, and is therefore waivable. *See In re Marriage of B.K. and B.P.*, 873 N.E.2d 729, 735 (Ind. Ct. App. 2007), *trans. denied*; *Lollar v. Hammes*, 952 N.E.2d 754, 756 (Ind. Ct. App. 2004); *Christensen v. Christensen*, 752 N.E.2d 179, 184 (Ind. Ct. App. 2001).

[16] Then in 2008 our supreme court decided *Stewart v. Vulliet*, 888 N.E.2d 761 (Ind. 2008). In *Stewart*, mother and father were married in Washington and lived there until 2003 when they relocated to Indiana. While in Indiana, mother who was pregnant at the time, filed for divorce from father. After filing for divorce, mother moved back to Washington where the child was born. In subsequent custody proceedings, the question became whether Indiana or Washington had jurisdiction.

[17] In *Stewart*, our supreme court consistently described this as a question of subject matter jurisdiction stating, "Some states have held that the *subject matter jurisdictional* requirement is not met if the child is born in another state." *Id.* at 765 (emphasis added). And "[t]he UCCJL confers *subject matter jurisdiction* to a state if the state is the home state of the child at the time of commencement of

the proceeding." *Id.* (emphasis added) (statutory citation omitted).[5] The court also explained, "Upon the birth of [child], Washington became her home state. Thereafter, Washington had concurrent *subject matter jurisdiction* to determine [child's] custody." *Id.* at 765–66 (emphasis added) (citations omitted). The *Stewart* court did not cite to *Williams*, *Troxel*, or *K.S.*

[18] A year after Stewart was decided, a panel of this court noted in *In re Guardianship of S.M.*,

> The parties agree that, as the courts of two states are involved in the matter, a critical determination is whether the trial court had jurisdiction under the Uniform Child Custody Jurisdiction Law ("UCCJL")—Indiana Code Article 31–21. Indiana has codified the UCCJL regarding interstate child custody disputes. "[I]ts primary aim is to reduce court conflicts among states." *Stewart v. Vulliet,* 888 N.E.2d 761, 768 (Ind. 2008), *reh'g denied.* Most of the UCCJL's provisions address whether a trial court has *subject matter jurisdiction*. *See id.* at 765. In *Stewart,* the Indiana Supreme Court referred repeatedly to a determination under the UCCJL as one of *subject matter jurisdiction*. *Id.* at 765–67.

918 N.E.2d 746, 748–49 (Ind. Ct. App. 2009) (emphases added).

[19] After *Stewart* and *In re S.M.* were decided, our court issued several opinions that continue to rely on *Williams* for the proposition that the UCCJA does *not* confer subject matter jurisdiction. In *In re B.J.N.*, 19 N.E.3d 765, 768–69 (Ind. Ct. App.

---

[5] Indiana Code Section 31-17-3-3-(a)(4) fell under the Uniform Child Custody Jurisdiction Law which the Indiana General Assembly supplanted with the UCCJA. *Stewart v. Vulliet*, 888 N.E.2d 761, 764 n.1 (Ind. 2008).

2014), we relied on *Williams* and held that "jurisdiction for purposes of the UCCJA means jurisdiction over the particular case. Because judgments rendered by courts lacking this type of jurisdiction are only voidable, [the father] waived his challenge when he consented to the [court's] jurisdiction." (citations omitted).

[20] In *Barwick v. Ceruti*, 31 N.E.3d 1008, 1013 (Ind. Ct. App. 2015), a panel of this court again relied on *Williams* and found that mother waived appellate review of a jurisdictional challenge because she conceded that the court had jurisdiction and participated in court proceedings. And in *Brown v. Lunsford*, 63 N.E.3d 1057, 1060 (Ind. Ct. App. 2016), we reaffirmed the holding in *Williams* that the jurisdictional limits imposed by the UCCJA are not that of subject matter jurisdiction. The *Brown* court then held that because mother raised her jurisdiction challenge for the first time in a motion to correct error, her challenge was waived. *Id.* at 1061.

[21] Since the decisions in *Stewart* and *In re S.M.*, no Indiana case has cited either case for the proposition that the UCCJA confers subject matter jurisdiction. If the *Stewart* court wanted to overturn *Williams* or *K.S.*, it would have done so explicitly, and therefore we believe *Stewart* is an outlier. Additionally, we decline to disrupt the precedent that our court has set in declining to refer to UCCJA jurisdiction as a question of subject matter jurisdiction. Circuit courts are courts of general jurisdiction and are thus empowered to hear all types of cases, including marriage dissolution proceedings and custody actions. *In re B.J.N.*, 19 N.E.3d at 768. Thus, we conclude that the Perry Circuit Court had

subject matter jurisdiction over the custody action. The Hayses here did not lodge their claims of procedural error, incorrectly framed as jurisdiction issues, in a timely manner.[6] Instead, the Hayses have brought the issue for the first time on appeal; it is therefore waived.

[22] Waiver notwithstanding however, we find no error. Indiana Code section 31-21-5-1 states:

> Except as otherwise provided in section 4 of this chapter, an Indiana court has jurisdiction to make an initial child custody determination only if one (1) of the following applies:
>
> (1) Indiana is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six (6) months before the commencement of the proceeding, and the child is absent from Indiana but a parent or person acting as a parent continues to live in Indiana.
>
> (2) A court of another state does not have jurisdiction under subdivision (1) or a court of the home state of the child has declined to exercise jurisdiction on the

---

[6] Additionally, Mrs. Hays acquiesced to the court's jurisdiction over this particular case:

| [Counsel]: | And with respect to [Father's] request, if he requests custody, alternatively placed with you temporarily, you understand custody is up to The Court right now, you would be agreeable to that? |
| [Mrs. Hays]: | Yes. |
| [Counsel]: | And you would agree to submit to The Court's jurisdiction and authority? |
| [Mrs. Hays]: | Yes. |

Tr. Vol. I, p. 154. *See In re B.J.N.*, 19 N.E.3d 765, 769 (Ind. Ct. App. 2014) (holding that jurisdiction for purposes of the UCCJA refers to the authority of a court to hear a particular case, and father waived a challenge when he consented to the trial court's jurisdiction).

ground that Indiana is the more appropriate forum under section 8 or 9 of this chapter, and:

> (A)    the child and the child's parents, or the child and at least one (1) parent or person acting as a parent, have a significant connection with Indiana other than mere physical presence; and

> (B)    substantial evidence is available in Indiana concerning the child's care, protection, training, and personal relationships.

(3)    All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that an Indiana court is the more appropriate forum to determine the custody of the child under section 8 or 9 of this chapter.

(4)    No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

[23] One week after Mother filed for divorce in Indiana, Father filed his own petition for divorce in Oklahoma in which he incorrectly stated that no other action involving custody had been filed in any other state, and he argued that Indiana lacked jurisdiction under the UCCJA. The Oklahoma court held a hearing in which it found: (1) neither Oklahoma nor Indiana had home-state jurisdiction; (2) neither Indiana nor Oklahoma had exclusive continuing jurisdiction; (3) both States could claim significant connection jurisdiction; and (4) because an action was filed in Indiana first, the Oklahoma court would abstain from exercising jurisdiction until Judge McConnell decided whether Indiana should exercise its concurrent jurisdiction. *See* Appellant's App. Vol. II, p. 27. Six days later, Judge McConnell decided to exercise jurisdiction. The

Hayses argue that this was an error because Oklahoma was B.H.'s home state, or in the alternative, that B.H. had no significant connection to Indiana. We disagree.

Neither Indiana nor Oklahoma qualify as a home state for B.H. under the UCCJA. The "home state" is the state in which a child lived with a parent, or a person acting as parent, for at least six consecutive months before the commencement of a child custody proceeding. Ind. Code § 31-21-2-8; *see also* 43 Okla. Stat. tit. 43, § 551-102(7) (utilizing same definition). Additionally, a period of temporary absence of either the parent or the person acting as parent is part of the period. *Id.* Mother filed for divorce on December 14, 2015,[7] and thus the applicable six-month time period was from June 14 to December 14.

During that time period, B.H. spent significant time in both Oklahoma and Indiana. B.H. was with the Hayses in Oklahoma from June 14 until Mrs. Hays brought B.H. back to Indiana at "the end of June, first of July, somewhere around in there." Tr. Vol. I, p. 126. B.H. then stayed in Indiana until August 24. B.H. was supposed to return to Indiana in November; however, the Hayses cancelled the trip because of snow and ice in Oklahoma. *Id.* at 163. Thus, B.H. remained in Oklahoma from August 24 until December 14.

---

[7] A child custody proceeding commences on the same date a parent files a petition for divorce. Indiana Code § 31-17-2-3(1).

[26] B.H. did not live in either Indiana or Oklahoma for six consecutive months prior to Mother's decision to file for divorce, and the time B.H. spent in Indiana does not qualify as a temporary absence. B.H. was not absent from Oklahoma for a few days, or even a week; but rather, he was with his Mother and Father in Indiana for nearly two months. When the home-state test does not apply, the significant connections test found in Indiana Code section 31-21-5-1(2) is used.

[27] The Oklahoma court found that "[b]oth states can claim significant connection jurisdiction but that jurisdiction would be concurrent and not exclusive." Appellant's App. Vol. II, p. 27. The Perry Circuit Court agreed, as indicated by a docket entry which states, "This Court being duly advised in the premises determines that it will exercise jurisdiction in the dissolution action filed 'first in time' . . . ." *Id.* at 6. At the time Mother filed for divorce, she was living in Indiana and Father had moved from Indiana only two days prior. Additionally, B.H. was born in Indiana and he has close family in Indiana including his maternal grandparents, his maternal uncle, and his cousins. Moreover, when Mother and Father returned to Indiana in February 2015, the family established a primary residence. While living in Indiana, B.H. was at his maternal grandparents' house frequently for family gatherings. Tr. Vol. III, p. 73. Based on these facts and circumstances, we cannot say that the trial court abused its discretion when it assumed jurisdiction under Indiana Code section 31-21-5-1(2) and the "first in time rule" in conformance with the Oklahoma court's abstention.

## II.   Custody Determination

[28]   The Hayses next contend that the trial court erred when it granted Mother primary physical custody of B.H. Specifically, the Hayses argue that they have rebutted the presumption that favors awarding custody of children to the natural parent, and that custody with the Hayses would be in the best interests of B.H. Again, we disagree.

[29]   We afford a trial court's custody determination considerable deference on appeal as it is the trial court that views the parties, observes their conduct, and hears their testimony. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). Accordingly, we do not reweigh the evidence on appeal or assess the credibility of witnesses. *Id.* We will not substitute our judgment for that of the trial court, and we will affirm the trial court's determination unless the decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. *Id.*

[30]   Where, as here, the trial court supports its custody determination with specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, we will not set aside the findings or judgment unless they are clearly erroneous. *Hughes v. Rogusta*, 830 N.E.2d 898, 902 (Ind. Ct. App. 2005).  We will disturb the trial court's judgment only where there is no evidence supporting the findings, or where the findings fail to support the judgment. *Id.* Moreover, we consider only the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.*

[31] The custody dispute here is between B.H.'s Mother and his paternal grandparents. Our supreme court has set forth the standard of review where the dispute is between a natural parent and a third party:

> [B]efore placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child. The presumption will not be overcome merely because a third party could provide the better things in life for the child. In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria. The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the child's best interests are substantially and significantly served by placement with another person. This determination falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review.

*In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002) (citation and quotation omitted). Our supreme court further explained that that there is an "important and strong presumption that the child's best interests are ordinarily served by placement in the custody of a natural parent." *Id.* This presumption "embodies innumerable social, psychological, cultural, and biological considerations that significantly benefit the child and serve the child's best

interests." *Id.* A nonparent must rebut this presumption by clear and convincing evidence, and only then will the court move on to an analysis of the child's best interests and a consideration of the nonparent's status as de facto custodians, if applicable. *T.H. v. R.J.*, 23 N.E.3d 776, 786 (Ind. Ct. App. 2014), *trans. denied.*

[32] The Hayses acknowledge the presumption in favor of Mother; however, they argue that the presumption has been overcome because "the evidence establishes that [Mother's] long acquiescence and voluntary relinquishment of B.H. to the Hayses has rendered them his de facto custodians and has allowed the three to bond to the point where their lives and affections are completely interwoven." Appellant's Br. at 49. The Hayses then support this statement in their brief by citing to several portions of the record.

[33] The Hayses' approach is problematic for two reasons. First, they only list two factors as evidence that the presumption has been overcome—long acquiescence and voluntary relinquishment resulting in an interwoven bond— when our supreme court has explained that a trial court may rely on many factors in making custody determinations. *In re B.H.*, 770 N.E.2d at 288; *see also T.H.*, 23 N.E.3d at 786. And second, the Hayses' citations to the record amount to a request for us to reweigh evidence, a role not appropriate on appeal. Simply put, the Hayses point us to portions of the record that it wishes the trial court had paid more attention to or given more weight.

[34] We acknowledge that there was evidence before the trial court which might have supported the Hayses' contentions; however, it is not enough that the

evidence *may* support some other conclusion. *A.J.L. v. D.A.L.*, 912 N.E.2d 866, 873 (Ind. Ct. App. 2009). Rather, the evidence before us must "positively require the conclusion contended for by the [Hayses] before there will be a reversal." *Id.* The evidence and reasonable inferences supporting the judgment of the trial court here do not positively require us to reach a different conclusion.

[35] The trial court stated in its order, "if a parent is able to provide an appropriate level of care they should be given the opportunity to do so. [Mother] should be given this opportunity." Appellant's App. Vol. II, p. 19. Here, the trial court recognized the parental presumption, and it indirectly determined that the Hayses had not rebutted it. The court also reminded the parties that in its provisional order, it had remarked that it was hopeful that one or both parents would be able to establish that they were fit to have custody of B.H.

[36] In its final order, the trial court found that Mother had met this standard, and in support the court noted that: (1) Mother had been gainfully employed and earning a good living since the provisional order; (2) both Mother and B.H. would soon qualify for insurance benefits because of her job; (3) Mother is subject to random drug screens through her employer, and she passed a hair follicle drug screen that was required as part of the parties' mediated settlement agreement; (4) Mother provided records showing that she underwent a court-ordered psychological evaluation which concluded that she did not have a mental illness or psychiatric diagnosis; (5) Mother made proper arrangements for childcare for B.H. as needed; (6) Mother currently lives with her parents in a

suitable home for B.H. where he has his own room; (7) B.H.'s maternal grandparents are supportive; and (8) B.H. and Mother have a good and loving relationship, and she cares for him adequately when he is with her. *Id.* at 18–19. These detailed findings provide ample support for the trial court's judgment awarding custody of B.H. to Mother.

[37] Further, the court commended the Hayses for their care of B.H. and stated, "Because [the Hayses] have had such a close and enduring relationship with [B.H.] the transition to the Mother's custody should be gradual and . . . . Even after the transition [the Hayses] should be a part of his life." *Id.* at 19. And when asked about the role the Hayses would have in B.H.'s life going forward, Mother testified, "they're part of his life. To take them completely out of his life would be traumatic as well, yes. So, I mean, I think we all need to be part of his life, but I think that it's in his best interest for [B.H.'s] mother to raise him." Tr. Vol. IV, p. 139.

[38] For us to conclude that the trial court erred in awarding custody of B.H. to Mother, we would need to reweigh evidence, view disputed facts in a light unfavorable to the judgment, and place ourselves in the position of the trier of fact, roles that are inappropriate on appeal. *See In re B.H.*, 770 N.E.2d at 287–

88. Accordingly, we decline to find the trial court's findings clearly erroneous or its judgment against the logic and effect of the evidence before it.[8]

### III. Attorney Fees

[39] Finally, the Hayses contend that the trial court erred when it awarded $1,365.00 in attorney fees, instead of the requested $6,364.00. On appeal, we review the trial court's decision in determining a reasonable amount of attorney fees for an abuse of discretion. *Kitchell v. Franklin*, 26 N.E.3d 1050, 1056 (Ind. Ct. App. 2015), *trans. denied*. A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *Id.*

[40] On February 21, 2017, the motions panel of this court granted the Hayses' request for attorney fees, " for the filing of [the Hayses'] Amended Verified and Combined Motion to Compel [Mother] to Provide the Hayses with 'An All-Purpose Consent-to-Treat Form,' and Request for Expedited Consideration." Appellant's App. Vol. II, p. 67. The matter was remanded to the trial court to determine the proper amount. On remand, the Hayses submitted an affidavit from counsel stating that counsel had spent 10.1 hours "working on [the]

---

[8] Because we find that the trial court did not err when it concluded the Hayses failed to rebut the natural parent presumption, we decline to address the Hayses' "best interests" argument in detail. *See* Appellant's Br. at 52–59. However, we note that the Hayses once again are asking us to reweigh evidence and view facts in a light unfavorable to the judgment. Moreover, the trial court found that "[i]n the long run [custody with Mother] is in [B.H.'s] best interest." Appellant's App. Vol. II, p. 19. According the trial court proper deference as we must, we decline to find this finding clearly erroneous.

Motion to Compel (and issues surrounding same)" which amounted to "$1865.50 in appellate attorney fees." *Id.* at 106.

[41] At the hearing on April 21, 2017, counsel for the Hayses submitted a supplemental affidavit showing that counsel had spent an additional 21.3 hours working on remand proceedings, which equated to $3,940.50. Counsel then added $550 for travel time to and attendance at the hearing. This resulted in an additional request of $4,495.50 in attorney fees, bringing the total to $6,364.00. Three business days after the hearing, the Hayses' counsel submitted redacted attorney-fee invoices to the trial court outlining the basis for the additional $4,495.50 request.

[42] The trial court stated in its May 16, 2017 order:

> With regard to the issue of an award of attorney fees pursuant to the Order of the Court of Appeals dated February 21, 2017, the parties had a full and fair opportunity to present such evidence as they wished at the hearing held on April 21, 2017. No evidence submitted thereafter shall be considered. Based upon the evidence submitted at hearing, the Court finds a reasonable attorney fee to be $1,365.00 and orders [Mother] to pay said fees to counsel for [the Hayses] at the address shown above at the rate of $30.00 per week until paid in full, commencing within two weeks from the date of this Order.

*Id.* at 31. The Hayses argue that the reduction in fees constitutes an abuse of the trial court's discretion. We disagree.

[43] The Hayses contend that trial courts must be guided by the factors found in Indiana Professional Conduct Rule 1.5(a) when determining a reasonable fee.

However, our supreme court has explained that "our Rules of Professional Conduct give us *guidance* as to factors to be considered in determining the reasonableness of attorney fees." *Order for Mandate of Funds Montgomery Cnty. Council v. Milligan*, 873 N.E.2d 1043, 1049 (Ind. 2007) (emphasis added). There is no mandatory requirement that the trial court explicitly consider the Rule 1.5(a) factors. *Cavallo v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1010 (Ind. Ct. App. 2015).

[44] The attorney-fee invoices provided to the trial court at the time of the hearing show that counsel spent a considerable amount of time: (1) preparing correspondence for the Hayses or opposing counsel; (2) exchanging correspondence with the Hayses or opposing counsel; (3) reviewing and analyzing case law regarding recouping attorney fees; and (4) correcting the motion to compel before filing it. Appellant's App. Vol. II, pp. 110–11. These tasks do not fall within our court's grant of fees "for the filing of [the Hayses'] Amended Verified and Combined Motion to Compel [Mother] to Provide the Hayses with 'An All-Purpose Consent-to-Treat Form,' and Request for Expedited Consideration." *Id.* at 67. Further, nothing in our court's order allows for attorney fees related to the remand hearing or any work done in preparation for the hearing.[9] Thus, the trial court acted within its discretion

---

[9] Counsel for the Hayses argue that "[Mother] is responsible for such remand fees as her behavior is what mandated them." Reply Br. at 22. However, Mother filed a consent-to-treat form that both she and her trial counsel believed complied with our courts order. Tr. Vol. IV, pp. 164–65. We do not know from its order how the trial court came to its fee determination; however, to the extent it chose not to award Hayses' counsel remand fees, we do not find this to be an abuse of discretion.

when it declined to consider attorney-fee invoices regarding the remand proceedings provided by the Hayses' counsel after the hearing was conducted. *Cf. Gerstbauer v. Styers*, 898 N.E.2d 369, 380 (Ind. Ct. App. 2008) (trial court abused its discretion awarding attorney fees when it misinterpreted a fee-shifting provision in a lease agreement).

[45] Because of the wide discretion we provide to trial court's in determining a reasonable amount of attorney fees, we cannot say the court abused its discretion here when it awarded $1365.00 to the Hayses' counsel. *See Song v. Iatarola*, 76 N.E.3d 926, 938 (Ind. Ct. App. 2017) (explaining that the trial court is considered an expert on attorney fees and may judicially know what constitutes a reasonable fee), *adhered to on reh'g*, 83 N.E.3d 80, *trans. denied.*

# Conclusion

[46] Based on the facts and circumstances before us, the trial court properly exercised jurisdiction over the custody of B.H. under the UCCJA, and did not err in awarding custody of B.H. to his Mother. Further, the trial court did not abuse its discretion when it awarded $1365.00 in attorney fees to the Hayses' counsel. Accordingly, we affirm.

Najam, J., and Barnes, J., concur.